CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Christy O'Connor (Bar No. 250350)
(E-mail: christy_oconnor@fd.org)
Deputy Federal Public Defender
Shannon Coit (Bar No. 298694)
(E-Mail: shannon_coit@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Arian Alani

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Arian Alani,<br><br>　　　　Defendant. | Case No. 23-cr-00564-MWF<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR BAIL REVIEW (CR 88)** |

Defendant Arian Alani, through his counsel of record, Deputy Federal Public Defenders Christy O'Connor and Shannon Coit, hereby submit this brief in support of his motion for bail review (CR 88). The government opposes bond based on danger to the community and risk of non-appearance.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 15, 2024     By  /s/ Shannon Coit
　　　　　　　　　　　　　　　Shannon Coit
　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　Attorney for Arian Alani

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. FACTUAL BACKGROUND .........................................................................2

    A.    Personal Background ............................................................................2

    B.    Instant Allegations ................................................................................3

    C.    Procedural History ................................................................................4

III. DISCUSSION .................................................................................................5

    A.    Proposed Bond Conditions....................................................................6

    B.    The Defense's Comprehensive Bond Package Includes Strict Conditions of Release to Reasonably Assure the Safety of Any Other Person and the Community. .....................................................7

        1.    The Manner of Mr. Alani's Past Distribution Indicates that He Will Not Be a Risk to the Community Upon Release. ....................8

        2.    Mr. Alani Is Sober and Has a Strong Community and Bond Conditions Can Be Set to Reasonably Assure He Will Not Be a Danger to the Community. .............................................................11

    C.    Conditions Can Reasonably Assure Mr. Alani's Appearance in this Case. .............................................................................................13

IV. CONCLUSION .............................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Gavino v. MacMahon*,
 499 F.2d 1191 (2d Cir. 1974) (per curiam) ................................................... 5

*United States v. Alqahtani*,
 2020 WL 4904068 (D.N.M. Aug. 20, 2020) ................................................ 13

*United States v. Bustamante-Conchas*,
 557 F. App'x. 803 (10th Cir. 2014) ............................................................... 6

*United States v. Dominguez*,
 783 F.2d 702 (7th Cir. 1986) ........................................................................ 6

*United States v. Fernandez-Alfonso*,
 816 F.2d 477 (9th Cir. 1987) ........................................................................ 5

*United States v. Gray*,
 651 F. Supp. 432 (W.D. Ark. 1987) ........................................................... 14

*United States v. Hernandez-Saldivar*,
 2022 WL 4474893 (N.D. Ala. Sept. 26, 2022) ............................................ 13

*United States v. Hir*,
 517 F.3d 1081 (9th Cir. 2008) ...................................................................... 6

*United States v. Koenig*,
 912 F.2d 1190 (9th Cir. 1990) ...................................................................... 5

*United States v. Mieses-Casiano*,
 161 F. Supp. 3d 166 (D.P.R. 2016) ............................................................... 6

*United States v. Motamedi*,
 767 F.2d 1403 (9th Cir. 1985) .............................................................. 5, 6, 13

*United States v. Salerno*,
 481 U.S. 739 (1987) ........................................................................... 5, 6, 7, 8

*United States v. Townsend*,
 897 F.2d 989 (9th Cir. 1990) ............................................................ 10, 13, 14

*United States v. Valdez*,
 2022 WL 3999957 (D.N.M. Sept. 1, 2022) ................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Docketed Cases**

*United States v. Alvarado*,
  Case No. 23-cr-00203, Dkt. No. 50 ................................................................ 4

*United States v. Benavides-Schorgi*,
  Case No. 23-cr-0164, Dkt. No. 31 .................................................................. 4

*United States v. Maya*,
  Case No. 23-cr-00052, Dkt. No. 28 ................................................................ 4

*United States v. Varvara*,
  Case No. 22-cr-00141, Dkt. No. 25 ................................................................ 4

*United States v. Villapania*,
  Case No. 23-cr-00060, Dkt. No. 44 ................................................................ 4

*United States v. Wolfe*,
  Case No. 22-cr-00322, Dkt. No. 36 ................................................................ 4

**Federal Statutes**

18 U.S.C. § 841 ..................................................................................................... 4

18 U.S.C. § 3142 ................................................................................................... 6

18 U.S.C. § 3145 ................................................................................................... 5

**Other Authorities**

*Drug-Induced Homicide*, Center for Health Policy and Law,
  https://www.healthinjustice.org/drug-induced-homicide (last visited
  March 15, 2024) ............................................................................................. 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

What happened in this case is a tragedy. It is clear, however, from the government's own charging papers that Arian Alani had no involvement in the greater drug conspiracy at the center of this case and had no knowledge that the pills he is accused of giving to his friend, the decedent, were laced with fentanyl. Considering these facts, the comprehensive bond conditions proposed in this case will mitigate any potential risk that Mr. Alani might pose to the community, as well as assure his appearance in this case.

That is because Mr. Alani's past actions allegedly posing a danger to the community, mainly, distributing drugs, are entirely connected to his personal use of those drugs. Mr. Alani is an addict who used and shared drugs with his friends. Any distribution Mr. Alani may have engaged in was always tied to his personal use and done so with others Mr. Alani knew, as evidenced by the facts of this case. So, as long as Mr. Alani is sober—and the Court can impose bond conditions to support and monitor his sobriety—he will not associate with the individuals he could distribute drugs to, nor will he buy, use, or distribute any drugs to anyone else.

Mr. Alani is now sober after going through a self-imposed detox while in custody and has maintained his sobriety ever since. Before the last bond hearing, Mr. Alani worked with a social worker from the Federal Public Defender's office to develop a post-release treatment plan and qualify for a spot in a residential drug treatment program in Los Angeles. He would do so again for the next hearing in front of this Court so that he could enroll in such a program immediately upon release as a condition of his bond and agree to whatever drug testing necessary. Mr. Alani will also receive a mental health evaluation and participate in location monitoring with a curfew, or home confinement, as well as surrender all travel documents and agree to travel

1

restrictions to increase the Court's supervision of his whereabouts and reduce any risk of flight.

Mr. Alani also has a strong community to support his sobriety and compliance with his bond conditions, members of which attended his last bond hearing. This support system includes Mr. Alani's long-term partner, Cedric Cid, who is willing to post a bond for up to $300,000.00 fully secured by cash to ensure Mr. Alani's appearance and compliance with his bond terms in this case. This money essentially represents Mr. Cid's (and his family's) life savings. Further, Mr. Alani's father is willing to sign an unsecured bond of up to $50,000.00, equal to his average year's salary. These bonds act as powerful incentives for Mr. Alani to comply with his bond conditions and appear in this case because both his partner and his father stand to lose a life altering amounts of money if he fails.

Pretrial Services also recommended release with conditions, and the conditions proposed by the defense are even stricter. Given all of these facts, Mr. Alani respectfully requests that this Court set reasonable terms and conditions of release and order him released forthwith.

## II.   FACTUAL BACKGROUND

### A.   Personal Background

Arian Alani is a thirty-five year old permanent U.S. resident who has spent the last few years following the death of his mother struggling with drug addiction. Though Mr. Alani is a citizen of Denmark, he moved to the United States with his parents in his early teens and has lived in Los Angeles ever since. He has built his entire life here and has strong ties to the community. Prior to his arrest, he was living with his partner of almost six years, Cedric Cid, in Burbank while taking classes at Pasadena City College. Mr. Cid had a heart transplant in October 2023, and Mr. Alani was helping care for Mr. Cid during his recovery when he was arrested.

Mr. Alani's life has not been without hardship, which led to and fueled his drug addiction. Mr. Alani lost his mother, with whom he was extremely close, a few years

ago and then his partner went through several terrifying episodes when his heart failed. These events were then compounded by the tragic facts of this case. Instead of addressing his trauma and grief, Mr. Alani developed a daily habit of using ketamine and took Adderall and Xanax regularly. He also consumed various other drugs—cocaine, oxycodone, GHB, marijuana, to name a few—recreationally and as a way to escape. Mr. Alani tried to get sober before through an out-patient drug treatment program, but he relapsed and returned to using within a few months.

Mr. Alani's drug use also led to his previous misdemeanor charge. He was convicted on Nevada state charges for a misdemeanor possession with the intent to sell GHB (commonly taken as a party drug) while in Las Vegas, Nevada. The facts of that case are consistent with Mr. Alani purchasing drugs for his personal use and the use of his friends, who were also drug users. Mr. Alani was not selling drugs to make a profit, nor selling drugs to people who he did not already know and who did not already use drugs.

### B.     Instant Allegations

It bears repeating that what happened in this case is a tragedy. A young man lost his life after consuming a variety of drugs, including a pill that contained fentanyl. But it is clear from the Indictment, and the evidence produced to the defense, that Mr. Alani had no idea that the pills he purchased, and then allegedly gave to his friend, contained fentanyl.

In the Indictment, the government accuses Mr. Alani of purchasing twenty-five oxycodone pills that were—unbeknownst to him—laced with fentanyl from the drug distribution operation at the center of this case. (Indictment, Dkt. No. 1, ["Ind."] at 6-7 (Overt Act Nos. 21-26).) Mr. Alani then purportedly gave a portion of these fake oxycodone pills to his friend. (*Id.*) His friend took some amount of those pills, along with other drugs, and the combination of those drugs led to a fatal overdose. (*Id.* at 7, 12.) Immediately following his friend's death, Mr. Alani texted the seller, and said "My boy just died yesterday," referring to his friend. (*Id.* at 7.) Mr. Alani then told the

seller that he "[s]houldn't be selling shit with fentanyl" in it. (*Id.*) These messages show unequivocally that Mr. Alani had no knowledge that the pills contained fentanyl and that if he did, he would have never purchased them. Other than that one purchase, Mr. Alani had no other experience with the drug operation. (*Id.* at 2.) The evidence shows that close friend referred Mr. Alani to the operation, reassured him of their credibility, and told him that the pills were prescription, all which was, of course, wrong.

      Mr. Alani now faces a single count of distributing fentanyl that resulted in a death under 18 U.S.C. § 841(a)(1), (b)(1)(C). (Ind. at 12.) This charge carries a twenty-year mandatory minimum. Recognizing that no plea offer has been extended in this case, and the defense makes no representation that it expects to receive such an offer, a recent survey of cases with this charge in this district reveals that many defendants plea to lesser charges, allowing the defense to argue for sentences lower than twenty years. *See, e.g., United States v. Benavides-Schorgi*, Case No. 23-cr-0164, Dkt. No. 31 ¶ 2(h) (January 26, 2024) (limiting the defense's argument for a sentence no fewer than 120 months); *United States v. Varvara*, Case No. 22-cr-00141, Dkt. No. 25 ¶ 2(h) (January 18, 2024) (same); *United States v. Wolfe*, Case No. 22-cr-00322, Dkt. No. 36 ¶ 2(h) (May 25, 2023) (same); *United States v. Villapania*, Case No. 23-cr-00060, Dkt. No. 44 ¶ 2(l) (January 3, 2024) (similar as to no fewer than 144 months); *United States v. Alvarado*, Case No. 23-cr-00203, Dkt. No. 50 ¶ 2(h) (November 7, 2023) (same as to no fewer than 144 months); *United States v. Maya*, Case No. 23-cr-00052, Dkt. No. 28 ¶ 2(l) (January 23, 2024) (similar as to no fewer than 168 months).

      C.    **Procedural History**

      Mr. Alani was arrested on or around November 21, 2023 and detained while awaiting an initial appearance before a magistrate judge. Mr. Alani almost did not appear in court for his initial appearance because he was experiencing such severe drug withdrawal symptoms that the defense was advised that he may be sent to the hospital. Mr. Alani also could not remember Mr. Cid's, or anyone's, phone number. The

4

defense ended up continuing argument to another date and Magistrate Judge Rozella A. Oliver ordered that Mr. Alani be detained.  On December 20, 2023, following the government's request for detention and over Pre-Trial's recommendation for release, Judge Oliver again ordered Mr. Alani to be detained.  After gathering additional bond resources, the defense applied for reconsideration.  Judge Oliver once again denied Mr. Alani's request for release.  Mr. Alani now appeals that decision.

This Court has the authority to review the Magistrate Judge's detention order. 18 U.S.C. § 3145(b).  A district court reviews de novo a magistrate judge's decision denying bail.  *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

### III.   DISCUSSION

Mr. Alani clearly had no knowledge that the pills he purchased from the drug operation in this case contained fentanyl.  Mr. Alani has now spent close to four months in custody getting clean and confronting this reality every day.  Mr. Alani is now sober and would benefit greatly from drug treatment and mental health services offered outside of custody.  The strict bond conditions proposed here will more than reasonably assure Mr. Alani is not a danger to the community nor a risk for nonappearance.

It is important in a case like this one to remember that the long standing ideal "[i]n our society[ is that] liberty is the norm, and detention prior to trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Congress codified this ideal in the Bail Reform Act, "guarantee[ing ]in a noncapital case the defendant will have the pretrial right to release on bail except in extreme and unusual circumstances."  *Gavino v. MacMahon*, 499 F.2d 1191, 1195 (2d Cir. 1974) (per curiam).  In other words, through the Bail Reform Act, Congress "mandate[d the] release of a person facing trial under the least restrictive condition or combination of conditions."  *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).   It also requires courts to "dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act."  *United States v. Fernandez-Alfonso*, 816 F.2d 477, 478 (9th Cir. 1987).

5

This case does have a presumption of detention, but that presumption can be rebutted by "*[a]ny evidence* favorable to a defendant that comes within the category listed in § 3142(g)(3)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added). The burden of production to rebut the presumption is "not heavy." *United States v. Bustamante-Conchas*, 557 F. App'x. 803, 806 (10th Cir. 2014); *see Dominguez*, 783 F.2d at 707 (the presumption may be rebutted with "evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3)."). Importantly, the government never gives up the burden of persuasion on its request for detention, even in a presumption case. *See, e.g.*, *United States v. Mieses-Casiano*, 161 F. Supp. 3d 166, 168 (D.P.R. 2016). Thus, detention is authorized only if the government proves: (i) by clear and convincing evidence, that no set of conditions will reasonably assure the safety of any other person or the community; and (ii) by a preponderance, that no set of conditions will reasonably assure the defendant's appearance. 18 U.S.C. § 3142; *see also Salerno*, 481 U.S. at 741, 750-52; *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *Motamedi*, 767 F.2d at 1405.

### A. Proposed Bond Conditions

There is a set of strict bond conditions that will reasonably assure Mr. Alani is not a danger to the community and that he will appear in this case. Those conditions include:

- Up to $300,000.00 bond fully secured by cash signed by Cedric Cid (Mr. Alani's long-term partner);
- Up to $50,000.00 unsecured bond signed by Amir Alani (Mr. Alani's father);
- Immediate release to an open bed in a residential drug treatment facility;
- A prohibition against using or possessing drugs, with drug testing and compliance searches;

6

- A prohibition against using or possessing controlled substance analogues, with drug testing and compliance searches;
- Location monitoring with a curfew, or home confinement, by GPS ankle bracelet;
- Travel restrictions to the Central District of California;
- Surrender all passports and travel documents and certify that he will not apply for any additional travel documents;
- Mental health assessment and psychological counseling;
- A prohibition on contacting the alleged victim's family and any known witnesses, to include all individuals named in the complaint;
- Submit to Pretrial Services supervision;
- Reside as approved by Pretrial Services; and
- Any other conditions that the Court deems appropriate.

These conditions are much stricter than those recommended by Pretrial Services. Pretrial Services recommended release with fewer bond resources (only $100,000 bond secured by a $20,000 cash deposit) and did not recommend residential drug treatment or location monitoring of any kind. Nonetheless, the defense is offering these terms and any additional terms the Court deems necessary.

**B.    The Defense's Comprehensive Bond Package Includes Strict Conditions of Release to Reasonably Assure the Safety of Any Other Person and the Community.**

Much has changed for Mr. Alani since he was arrested in this case. He is sober, has spent almost four months in federal custody, and is facing serious criminal charges that he wants to resolve. The defense's proposed comprehensive bond package, including strict conditions of release and significant bond amounts, more than reasonably assures that Mr. Alani will not return to buying or sharing drugs if released and, thus, is not a danger to the community. Accordingly, the government cannot meet its heavy burden to show, by clear and convincing evidence, otherwise. *See Salerno*,

7

481 U.S. at 741, 750-52.

### 1. The Manner of Mr. Alani's Past Distribution Indicates that He Will Not Be a Risk to the Community Upon Release.

Understanding the circumstances around Mr. Alani's past distribution, as well as his current sobriety, is important to assessing his future risk to the community. As explained above, Mr. Alani's distribution of drugs was directly linked to his personal use of drugs. Mr. Alani is an addict who purchased drugs for his own habit and for the habit of other addicts and drug users he knew. If Mr. Alani is no longer using drugs, he will no longer purchase any drugs; drug distribution is not, and has never been, a part of Mr. Alani's livelihood. Thus, for the purposes of bond, the Court should look to Mr. Alani's sobriety as a better indicator of whether Mr. Alani poses any future risk to the community, rather than his past actions.

Nonetheless, the Magistrate Judge relied on Mr. Alani's past distribution of drugs when granting the government's request for detention, so it is necessary to provide context to these events. The three events at issue are: (1) the allegations in the case; (2) the drugs found on Mr. Alani's person and at his home at the time of his arrest; and (3) his July 2021 misdemeanor charge. All three of these incidences involve Mr. Alani's personal use and distribution to people he knew, which will not occur when Mr. Alani is sober:

*Allegations in this case*: As discussed above, the government's own charging documents and evidence show that Mr. Alani purchased a small amount of drugs for his use and the use of others. Specifically, Mr. Alani is accused of purchasing twenty-five pills of what he believed was prescription oxycodone when the pills were actually counterfeit and contained fentanyl. (*See* Ind. at 6-7.) The government then accuses Mr. Alani of giving some of these pills to his friend. (*See id.* (describing that Mr. Alani sent a text message to the seller after the sale stating that his "boy," meaning his friend, passed away after taking the now-known counterfeit pills). The government does not accuse Mr. Alani of being a part of the larger drug organization in this case, nor any

8

other drug distribution operation.  Instead, Mr. Alani and the descendent were friends who shared drugs.  It is clear from Mr. Alani's contemporaneous statements and actions that if Mr. Alani knew the truth about the pills, he would have never purchased, nor distributed, them.  (*See* Ind. at 7.)

<u>*Drugs Found During Arrest and Home Search*</u>:  When federal agents arrested Mr. Alani a few days before Thanksgiving 2023, he was admittedly returning from using drugs with friends at a "friendsgiving."  He was under the influence of several drugs and had in his possession ketamine, cocaine, and methamphetamine, the latter of which was found at a low concentration in orange pills that resembled Adderall (3.8% of each pill).  (Dkt. 119 at Exs. 1-4.)  He also possessed a digital scale and baggies.  The Magistrate Judge stated that this paraphernalia is indicative of distribution, not of personal use.  However, these items are consistent with how Mr. Alani used drugs personally, as well as how he distributed drugs socially.  Mr. Alani weighed ketamine for his own daily habit and used the scale and baggies to divide drugs among friends.  The drugs and paraphernalia found in the home were also consistent with Mr. Alani's personal use of drugs.  It was also clear that Mr. Alani was personally using drugs prior to his arrest.  He exhibited withdrawal symptoms to such an extent that counsel was advised that he may be taken to the hospital instead of duty court because of his condition.

<u>*Previous Misdemeanor Charge*</u>: In 2021, Mr. Alani was convicted of a state misdemeanor charge of possessing GHB, a drug commonly taken as a "party drug," with the intent to distribute while in Las Vegas, Nevada.  This charge stemmed from a night out with friends where Mr. Alani was arrested for possessing drugs that he was using personally and giving to friends, who were also drug users.  Similar to the above, Mr. Alani did not intend to distribute these drugs to make a profit, nor was he intending to distribute the drug to anyone he did not already know and who did not already use drugs.

\*   \*   \*

As an initial matter, the weight of the evidence against a defendant is the "least important" factor when reviewing the government's pretrial detention request. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors." (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985))). This rationale safeguards the presumption of innocence, the very bedrock of our criminal justice system. *See id.*

Second, all three of these incidents follow the same pattern: Mr. Alani purchased a small amount of drugs for his use and the use of others. He then either gave those drugs to other people or was arrested before he could do so. This pattern is not uncommon among drugs users. Drug users regularly buy, sell, and share drugs with other each other, even when the sharing of those drugs come with grave risks. In fact, it is the norm. In a recent survey of cases similar to this one (cases involving drug-induced homicide charges), the Center of Health Policy and Law found that half the cases involved care takers, family members, partners, or friends, which was a greater percentage than cases involving the typical buyer/seller, or "drug dealer"-type relationship. *See Drug-Induced Homicide*, Center for Health Policy and Law, https://www.healthinjustice.org/drug-induced-homicide (last visited March 15, 2024). That was also the case here.

Third, though the government argued below that Mr. Alani is an "unrepentant drug dealer"[1] who cannot be stopped because he continued to use drugs in a similar

---

[1] The government also argued to the Magistrate Judge that Mr. Alani "killed" his friend. (Dkt. No. 119 at 7.) If the government was implying that Mr. Alani intentionally caused his friend's death, the Court should reject such an implication. The government's own version of events shows that Mr. Alani had no such intention. (*See* Ind. at 7.), The evidence also demonstrates that he had no knowledge that the pills he purchased were counterfeit, nor that they included fentanyl, and had even taken steps to verify the seller and that the pills were prescription.

10

manner, this could not be further from the truth.[2] Mr. Alani's drug use and perceived partying following the tragedy in this case is consistent with someone who is grieving, especially someone with a drug addiction. Mr. Alani was trying to escape his feelings, as he did with every other trauma in his life, as many people do (drug addiction or not). What is different now, however, is that Mr. Alani has spent the last four months in custody, has gotten clean, and is finally ready to break the cycle he has been stuck in.

In sum, Mr. Alani's past distribution (admitted and suspected) follow the same pattern where any distribution was intertwined with his personal use. Thus, his personal use, or lack of such use, and sobriety are much more indictive as to whether he would engage in any distribution in the future. Accordingly, the Court should look to Mr. Alani's sobriety to assess whether conditions can reasonably assure Mr. Alani will not be a danger to the community if released, not his past actions.

### 2. Mr. Alani Is Sober and Has a Strong Community and Bond Conditions Can Be Set to Reasonably Assure He Will Not Be a Danger to the Community.

Mr. Alani is currently sober, and there are conditions of bond to ensure that he maintains his sobriety and is not a danger to the community. One of those conditions is entering a residential drug treatment program upon release. Such a treatment program will provide Mr. Alani with the support to treat his grief and trauma, while also providing relapse prevention techniques and other helpful life skills to keep Mr. Alani sober.[3] He will also agree to be drug tested and that his person and home be subject to

---

[2] If Mr. Alani was such a danger to the community as the government argues, the government has not properly addressed why it waited over a year and a half to arrest Mr. Alani. The government cannot hide behind the length to prosecute this case when, for over a year, the government had in its possession virtually all the evidence it needed, including Mr. Alani's statements to the Burbank police where he confessed virtually everything that he knew about the case.

[3] As an example, Mr. Alani was scheduled to check-in for an open bed at Sadler Healthcare, Inc. the day after the previous bond hearing. Upon arrival, that program customizes a treatment plan for each resident according to the severity of addition, and the program runs from sixty to ninety days as needed. The program includes three

search to ensure he is not using or distributing any drugs. He will also complete a mental health evaluation.

Mr. Alani has a strong community of friends and family members, including his partner, who do not use drugs to support him once he is released. His partner, Cedric Cid, is willing to post a $300,000.00 bond fully secured by cash. This money essentially represents Mr. Cid's life savings. It includes money from a life insurance pay out he received recently following his father's November 2023 death, bonds he will cash out early for this purpose, and a gift from his mother from her retirement savings. Mr. Alani's father, Amir Alani, does not have the money to fully secure a bond but he is willing to sign an unsecured bond for $50,000.00, which is equal to his average year's salary. Both of these bonds creates a significant incentive for Mr. Alani to comply with all his bond conditions, which requires his sobriety. The Court should be reasonably assured that Mr. Alani will not walk out of rehab, test positive on a test, possess or distribute drugs, or violate any other bond condition when these life-altering amounts of bonds demand his compliance.

Though Mr. Alani has proven that he has the will and ability to maintain his sobriety, he also desperately needs further resources to ensure he will not relapse and, importantly, address his mental health issues. Mr. Alani recently told his social worker in the Federal Defender's office that he is experiencing excessive worrying, anxiety, a racing heart, reoccurring distressing memories, loss of sleep, loss of appetite, and hypervigilance. He has not received any support for these symptoms while in custody even though he and counsel have requested psychological support. Mr. Alani also reported that other inmates harassed him, which he believes is due to his sexual orientation, and is contributing to his mental health decline. Nonetheless, Mr. Alani

---

group sessions each day, as well as one one-on-one therapy session a week. Group sessions focus on cognitive behavioral therapy, anger management, life skills, trauma, and relapse prevention. The facility also has its own random drug testing. The defense anticipates locating an open bed at the same or similar facility prior to the bond appeal hearing in front of this Court.

has not turned substance abuse and is trying to secure resources to address his mental health. That alone shows immense growth in someone recovering from addiction.

It is the government's heavy burden to prove, by clear and convincing evidence, that there are no conditions of release that can ensure Mr. Alani will be a danger to the community. The government cannot meet that burden in light of the comprehensive bond package offered by the defense, which includes conditions even stricter than those proposed by Pretrial Services. Accordingly, this Court should reverse the Magistrate Judge's decision and hold that conditions can be set to reasonably ensure Mr. Alani is not a danger to the community.

### C. Conditions Can Reasonably Assure Mr. Alani's Appearance in this Case.

Risk of non-appearance was not a factor in the Magistrate Judge's decision to detain Mr. Alani, but even so, there is no risk of non-appearance here. For this factor, the government has the burden of showing by a preponderance of the evidence that no condition or combination of conditions can reasonably assure Mr. Alani's appearance. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

At the previous hearing, the government pointed to Mr. Alani's non-citizenship as a factor for non-appearance, but this alone is not sufficient. While the mere fact that Mr. Alani is not a citizen "may be taken into account, [] alienage does not by itself tip the balance either for or against detention." *Townsend*, 897 F.2d at 994. Instead, detention is usually reserved for those who have a history of failing to appear. *See, e.g., United States v. Alqahtani*, 2020 WL 4904068 at *2-3 (D.N.M. Aug. 20, 2020) (defendant charged with 922(g)(5)(B) offense detained due to "history of failing to appear for court proceedings"); *see also United States v. Hernandez-Saldivar*, 2022 WL 4474893 (N.D. Ala. Sept. 26, 2022) (history of non-appearance at court proceedings); *United States v. Valdez*, 2022 WL 3999957 at *12 (D.N.M. Sept. 1, 2022) (history of non-appearance at court proceedings). Mr. Alani has no such history of nonappearance.

     Instead, Mr. Alani is a permanent resident of the United States, has lived in this country for over twenty years, and has complied with any and all previous court orders. He has also already surrendered his passport and green card and will certify that he will not seek to obtain any other travel documents if released. Additionally, Mr. Alani will be subject to location monitoring, or home confinement, if the Court holds that such a condition is necessary. Mr. Alani's release also would be secured by significant secured and unsecured bond amounts. Further, as a practical matter, Mr. Alani is only thirty-five years old and has the majority of his life ahead of him. If he absconded, he would be forced to spend the rest of his life looking over his shoulder in a country where he has no ties (his home country of Denmark has an extradition treaty with the United States). Such a life is not worth it for him, even if he faces a twenty-year mandatory minimum sentence.[4] Moreover, the facts of this case is the "least important" factor when considering pretrial detention request. *See Townsend*, 897 F.2d at 994; *see also United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987) ("[T]he court does not believe that . . . any court should presume that every person charged is likely to flee simply because the evidence against him appears to be weighty. . . . Such a presumption would appear to be tantamount to a presumption of guilty, a presumption that our system simply does not allow.").

     In short, there are no factors indicating that Mr. Alani poses a risk of flight. This is certainly a situation where a combination of conditions can reasonably assure his appearance.

---

[4] As discussed above, *supra* page 5, cases in this district have included plea agreements allowing the defense to argue for sentences far lower than twenty years. *See, e.g., Benavides-Schorgi*, Case No. 23-cr-0164 (limiting the defense's argument for a sentence no fewer than 120 months); *Varvara*, Case No. 22-cr-00141 (same); *Wolfe*, Case No. 22-cr-00322 (same); *Villapania*, Case No. 23-cr-00060 (similar as to no fewer than 144 months); *Alvarado*, Case No. 23-cr-00203 (same as to no fewer than 144 months); *Maya*, Case No. 23-cr-00052 (similar as to no fewer than 168 months).

## IV. CONCLUSION

Even in this presumption case, the defense can easily rebut the presumption and the government cannot meet its burden that, by clear and convincing evidence, no set of conditions will reasonably assure the safety of any other person or the community or, by the preponderance of the evidence, that no set of conditions will reasonably assure Mr. Alani's appearance if Mr. Alani is released. Accordingly, this Court should reverse the Magistrate Judge's order of detention and order Mr. Alani's release with conditions.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 15, 2024       By  /s/ *Shannon M. Coit*
Shannon M. Coit
Deputy Federal Public Defender
Attorney for Arian Alani